IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

JAMES WILEY,

        Plaintiff,       )
                   )
v.                )     Case No. CV-02-TMP-2137-M
                   )
CITY OF PELL CITY, EDWIN    )
BRASHER, GEORGE MASSEY, JOHN )
ROWLAND, and VINCENT      )
WARRINGTON,            )
                   )
        Defendants.   )

**MEMORANDUM OPINION**

This cause is before the court on the motion for summary judgment filed on March 31, 2004, by the defendants, the City of Pell City, Edwin Brasher, George Massey, John Rowland, and Vincent Warrington. Defendants seek dismissal of all of plaintiff's claims based on insufficiency of the pleadings, statutory immunity, discretionary function, and qualified immunities. This matter has been fully briefed and oral argument has been heard. The court has considered the evidence and the arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c); accordingly, the court submits this memorandum opinion.

## FACTS

Plaintiff James Wiley brought this action seeking money damages and attorneys fees pursuant to 42 U.S.C. § 1983 and Alabama state law, contending that the defendants unlawfully arrested him and used excessive force to effectuate the arrest.  Wiley's claims arise from an incident in which Pell City police officers were called to a business where Wiley was engaged in an altercation with another man.  The defendants assert that all of Wiley's claims are barred because the complaint fails to adequately state a claim and by the doctrine of qualified immunity, statutory immunity, and discretionary function immunity.  For purposes of determining the merits of defendants' motion for summary judgment, the court views the facts in the light most favorable to the nonmovant and so considers the following facts to be undisputed or viewed most favorably to the plaintiff.

On September 1, 2001, Cathy Wiley Russell, plaintiff's former wife, called 911 to summon police to her place of business in Pell City, The Tool Shed.  Both she and plaintiff continued to own and operate The Tool Shed, despite their divorce.  She told dispatchers that her ex-husband was killing her current husband.[1]  When the 911 dispatcher asked Mrs. Russell if there were any weapons involved, Mrs. Russell stated: "I think he does have a gun."  She then

---

[1]     Mrs. Russell was divorced from Wiley, and later married John Russell, a former employee of The Tool Shed.

2

described the attacker as James Wiley and told the dispatcher what
Wiley was wearing.  The dispatcher informed police that there was
a fight at The Tool Shed and that there possibly was a man with a
gun involved.  When police arrived at The Tool Shed, Russell was
outside of the store, leaning against a truck and clutching his
chest.  Mrs. Russell told police that Wiley was inside and had a
gun.[2]  Officers Massey and Warrington entered the store and found
Wiley inside, holding a broken wheelbarrow handle.[3]  Massey told
Wiley to put the stick down, in response to which Wiley "pitched"
the stick against a counter and moved toward Massey.  Wiley told
the officers that he did not have a gun, that he was the owner of
the business, and that they had the wrong person.  Massey and
Warrington grabbed Wiley, threw him to the ground, and placed his
hands in handcuffs behind his back.  After handcuffing Wiley,
Massey held Wiley's head by the hair and twice slammed Wiley's head
against the concrete floor of the store.  The officers then sat
Wiley up-right on the floor.  By that time, Officer Rowland had

---

[2]     Although Mrs. Russell indicated that Wiley had a gun, it
appears that she believed that Wiley owned a gun, and might be
armed with a gun, but that she did not see a gun on the day of the
incident.  Defendants do not dispute that they found no gun on
Wiley when he was arrested.

[3]     Plaintiff repeatedly asserts that he was holding the
handle only to defend himself, and that Russell had been the
aggressor.  These alleged facts are irrelevant, however, to the
instant motion because there is no allegation that the officers
witnessed any attack or had any reason to believe that the
plaintiff was not the aggressor, as Mrs. Wiley had reported.

entered the back door of the store with his gun drawn.  Rowland put the gun to Wiley's head and told him that he "didn't know how lucky [he] was that [he] didn't get [his] fucking brains blowed out [sic]."[4]  Sgt. Brasher then entered the store.

Paramedics responded to the 911 call and examined Wiley on the scene, but Wiley refused treatment.  Officers removed the handcuffs from Wiley and took him to the police station, where he was charged with assault in the third degree, a misdemeanor.  He was photographed and fingerprinted, and then released on $500 bail. Wiley later went to the emergency room at St. Clair County Medical Center, but did not wait long enough to receive treatment.  Later in the day, he went to the emergency room at Baptist Montclair Hospital about 30 miles away in Birmingham, where he was examined and was given Tylenol.  Wiley alleges that he continues to have health problems as a result of the officers' conduct, including severe headaches, and watering, burning, and blurring of vision in his left eye.

Wiley filed the complaint commencing this action on August 30, 2002.  He asserts claims of unlawful arrest and excessive force in

_____

[4]     Plaintiff made this allegation in his deposition.  There is no reference to the use of the gun or to any verbal threat in any pleading.  Accordingly, the court must conclude that this particular allegation of excessive force has not been pled, and need not be addressed as a claim.  The only excessive force claim explicitly pleaded in the complaint is the allegation arising from Massey's conduct in allegedly "slamming" plaintiff's head onto the floor twice after Wiley was handcuffed.

violation of his civil rights, and state-law claims of false arrest, false imprisonment, and assault and battery.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving

5

party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Comm., Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility deter-minations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable

7

inferences are to be drawn in his favor.  <u>Anderson</u>, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  <u>Brown v. City of Clewiston</u>, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).


**DISCUSSION**

**I. § 1983 Claims**

   **A. Immunity of the Individual Defendants**

   Plaintiff's claims set forth as Counts I and II, for unlawful arrest and excessive use of force, arise under 42 U.S.C. § 1983, which provides a right of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" when the deprivation is caused by anyone acting under color of law.  <u>Id</u>.  Essentially, plaintiff asserts that he was unlawfully arrested after the altercation at The Tool Shed, and that officer Massey employed excessive force in effectuating the arrest.[5]

   Under federal law, it is well settled that qualified immunity protects government officials performing discretionary functions from civil suit, and from liability, where their conduct does not

─────────────────────

        [5]    As the court already has noted, plaintiff identifies Massey as the officer who slammed his head into the floor, and that action is the only action that is pled as an excessive force claim. All of the individual defendants, however, are alleged to have participated in the arrest and, therefore, are deemed to be defendants named in the unlawful arrest claim.

8

violate "clearly established statutory or constitutional rights". Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). The shield of qualified immunity has been expanded to include acts that may not involve the exercise of "actual discretion," and can include acts that may be ministerial but are "job-related functions" and that occur through means that are within the official's authority to utilize. Holloman v. Harland, ___ F.3d ___, 2004 WL 1178465, *6, (11th Cir. May 28, 2004), quoting Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1185 n. 17 (11th Cir. 1994). Furthermore, it is the general rule that qualified immunity will protect government actors from liability, and only in "exceptional cases" will the immunity be unavailable as a shield. Harris v. Board of Edu. of Atlanta, 105 F.3d 591, 595 (11th Cir. 1997). Even so, qualified immunity does not apply in those instances where the case law establishes a "bright line" in such a "concrete and factually defined context" to make it obvious to all reasonable government actors in the defendant's place that the actions violate federal law. Scarbrough v. Myles, 245 F.3d 1299, 1301 (11th Cir. 2001). Although prior existing caselaw need not be "on all fours" with the facts of the instant case for immunity to be lost, prior caselaw must be sufficient to give the defendant fair notice that his conduct is unlawful. Hope v. Pelzer, 536 U.S. 730, 122 S. Ct.

2508, 153 L. Ed. 2d 666 (2002). The United States Supreme Court has recognized that officials can be on notice that their conduct violates federal law, even in novel situations. <u>Hope v. Pelzer</u>, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002). The test is whether the state of the law at the time of the incident made the basis of the complaint gave the defendants "fair warning" that their conduct was unconstitutional. <u>Id.</u>

The initial burden of demonstrating that the public official was acting within the scope of his position lies with the defendant asserting that defense. <u>Holloman</u>, 2004 WL 1178465 at *5. The test is not whether the defendants had the authority to effectuate an illegal act, but whether their jobs entailed engaging generally in the act in question. <u>See</u> <u>id</u>. at *7. In other words, the court does not ask whether defendants had the right to illegally arrest the plaintiff, or to use excessive force against the plaintiff, but simply whether making arrests, and using necessary force to do so, were within the general scope of the officers' duties. The answer, of course, is in the affirmative.

Once the defendant has met that burden, as defendants in this case have, the burden shifts to the plaintiff to show that the defendants are not entitled to qualified immunity. <u>Id.</u> To prevail against an assertion of qualified immunity, the plaintiff must demonstrate that: "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of

10

the alleged violation." Id., citing Wilson v. Layne, 526 U.S. 603, 609, 199 S. Ct. 1692, 1697, 143 L. Ed. 2d 818 (1999).

### 1.  Unlawful Arrest

In this case, the plaintiff argues that the defendant officers were not acting within their authority because they do not have authority under Alabama law to make a warrantless arrest for a misdemeanor unless the officer witnesses the unlawful act. (Plaintiff's brief at p. 10, citing Ala. Code § 15-10-3 and Ala. R. Crim. P. 4.1(a)).  As the Eleventh Circuit Court of Appeals explained concerning an alleged illegal arrest in Von Stein v. Brescher, 904 F.2d 572 (1990), law enforcement officials will sometimes "mistakenly conclude that probable cause" exists, but in those instances the officials still are shielded by qualified immunity.  Id. at 579, citing Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  The issue is whether there existed at the time "arguable" probable cause.  See Von Stein, 904 F.2d at 579, and cases cited therein.  Actual probable cause need not be proved to warrant the application of qualified immunity; rather, the standard is "whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003), cert. denied, 124 S. Ct. 128, 157 L. Ed. 2d 143 (2003).  "Even law enforcement officials who

11

reasonably but mistakenly conclude that probable cause is present are entitled to immunity."   323 F.3d at 878, quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991).

In this case it is clear that the officers responding to the 911 call at The Tool Shed had arguable probable cause to believe that a felony had been committed.   They entered what they believed to be a fight involving a gun, they witnessed a man who appeared to have been injured on the scene, and they saw the plaintiff wielding a broken wheelbarrow handle.   The officers had reason to believe that the plaintiff had committed an assault with a deadly weapon or an assault with intent to kill.   The officers also had reason to believe that the plaintiff was committing a breach of the peace in their presence.[6]   The fact that Wiley ultimately was charged with a misdemeanor does not negate the officers' reasonable belief at the time they made the arrest that the matter was more serious than

_____

[6] Rule 4.1 of the Alabama Rules of Criminal Procedure incorporates Alabama statutory law authorizing warrantless arrests. <u>Ala. Code</u> § 15-10-3(a)(1) (1975) explicitly authorizes a police officer to make a warrantless arrest "If a public offense has been committed or *a breach of the peace threatened in the presence of the officer.*" [Italics added].   In this case, even though the officers did not witness the actual assault on Russell, a "breach of the peace" certainly was threatened in their presence when they witnessed plaintiff wielding a broken wheelbarrow handle while obviously angry at Russell and Mrs. Russell.   They had probable cause to believe that, unless plaintiff were restrained, the confrontation with Russell would resume.   Thus, it is far from clear that the arrest was even illegal under Alabama law.

a third-degree assault. Accordingly, the court finds that, even if the officers lacked probable cause to make an arrest for assault third degree under Alabama law, they are shielded by qualified immunity. *Arguable* probable cause existed for the officers to believe reasonably that the plaintiff was engaged in a felony assault. Thus, plaintiff's claim of unlawful arrest against the four individual police officers pursuant to § 1983 is due to be dismissed.

### 2. Excessive Force

To establish a claim for use of excessive force in violation of the Fourth Amendment, the plaintiff is required to present evidence that would warrant a reasonable jury concluding that the force used against him after he was handcuffed on the floor of the store was "objectively unreasonable" – that is, whether a reasonable officer in the same situation would have believed that the force used was excessive. Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998). "Whether the force used is reasonable turns on 'the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Graham v. Connor, 490 U.S. 386,

394, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989)); <u>see also</u>
<u>Smith v. Mattox</u>, 127 F.3d 1416 (11th Cir. 1997).

Plaintiff does not cite any cases that demonstrate that there
exists clearly established federal law that would prohibit the
alleged conduct - slamming plaintiff's head against the floor after
he was handcuffed.  Even so, the court is aware of cases that hold
that the use of force after an arrestee is restrained can be deemed
a constitutional violation.  The court considers <u>Smith v. Mattox</u>,
127 F.3d 1416 (11th Cir. 1997), and <u>Sheth v. Webster</u>, 145 F.3d 1231
(11th Cir. 1998), in which non-threatening persons were injured by
police effecting an arrest with unnecessary force.  <u>See, also,</u>
<u>Thornton v. City of Macon</u>, 132 F.3d 1395, 1400 (11th Cir. 1998).
In <u>Smith</u>, a suspect who had initially threatened an officer with a
baseball bat surrendered to a pursuing officer.  The officer then
broke the suspect's arm while he lay face down being handcuffed.
Even though the initial use of force was warranted by the
threatening act of the suspect, once he submitted to authority and
ceased to resist, the need for the use of force and the degree of
force proper under the circumstances diminished greatly.
Similarly, in <u>Steth</u>, an officer slammed a non-threatening female
motel owner into a vending machine while arresting her without
cause.  The events in both of these cases occurred in or before

14

1994,[7] predating the arrest in this case by seven years, yet the court of appeals concluded that the law was sufficiently well-established in 1994 that neither of the officers involved in those cases could claim the benefit of qualified immunity.   It must follow, of course, that if the law was clearly established in 1994 for purposes of Smith and Steth, it also was clearly established in 2001, when this case arose.

The version of the facts offered by Wiley establishes the objective unreasonableness of the force used after he was handcuffed.[8]   While the defendants disagree with Wiley's description of the events, this does nothing more than prove the existence of genuine issues of fact that preclude summary judgment. The facts and circumstances, viewed most favorably for Wiley, reveal that Massey was on top of Wiley, and that Wiley was lying face-down on the floor with his hands cuffed behind his back.   A reasonable officer simply would not perceive Wiley, at that point

---

[7]    Although the reported opinion in Smith does not reveal the date of the events in that case, the court notes that the district court case had a "94" case number, indicating that the complaint commencing the case was filed in 1994.   The events underlying the complaint, of course, occurred before that time.

[8]    The fact that the officers tackled Wiley or pushed him to the floor before handcuffing him is not at issue, and the court notes that if Wiley was injured in the "takedown," as the defendants argue, that scenario presents a different question. According to Wiley, however, the injury occurred after Wiley was on the floor, in handcuffs, and not resisting the officers or threatening anyone.

in time, to be a threat to do serious bodily injury to anyone on the scene. Previous law gave reasonable officers fair warning that inflicting injury on a man who was posing no threat and was already handcuffed was illegal. This scenario, if accepted as true by a jury, would warrant a finding of a constitutional violation.

Even though it can be argued that the officers were justified in the use of force initially to gain control of the plaintiff and, perhaps, to throw him to the ground and handcuff him, there is no justification for slamming his head into the concrete floor *after* he had been subdued. While the court recognizes that the defendants deny that this occurred, the facts presented by the plaintiff, when viewed favorably to him, warrant that conclusion for purposes of deciding this motion. Assuming that fact, that after being subdued, his head was smashed into the floor twice, no reasonable officer could have concluded that such was necessary and reasonable.

The only defendant against whom the excessive force claim is sufficiently pled is Massey. Wiley testified at deposition that it was officer Massey who held his head and slammed it into the concrete. The cases cited above compel the conclusion that every like-situated, reasonable government agent had fair warning that what defendant Massey is accused of doing violated federal law under the instant circumstances. See, e.g., Smith v. Mattox,

16

127 F.3d 1416 (11th Cir. 1997).  Accordingly, the shield of qualified immunity is not available to Massey under these circumstances, and the motion for summary judgment on this claim is due to be denied as to Massey.

As to the remaining individual defendants, however, the motion is due to be granted.  Wiley's description of the use of force against him makes clear that only Massey was involved and that none of the other officers on the scene could have anticipated Massey's conduct or intervened to prevent it.  No conduct by any of the other three officers proximately caused a violation of the plaintiff's right to be free of the use of excessive force.  The law requires officers to prevent to the use of unnecessary force by others, and they may not stand idly by while one of their colleagues uses unconstitutionally excessive force.  <u>Byrd v. Clark</u>, 783 F.2d 1002, 1007 (11th Cir. 1986); <u>Priester v. City of Riviera Beach, Fla.</u>, 208 F.3d 919 (11th Cir. 2000).  Nevertheless, an officer is liable for another's unnecessary use of force only if he has a reasonable opportunity to intervene or prevent its use and fails to do so.  <u>Ensley v. Soper</u>, 142 F.3d 1402, 1407 (11th Cir. 1998); <u>Priester v. City of Riviera Beach, Fla.</u>, 208 F.3d 919, 924 (11th Cir. 2000)("This liability ... only arises when the officer is in a position to intervene and fails to do so.").  Instances of force that are so unanticipated and quick that other officers have no chance to prevent them do not expose officers to liability

17

merely because they failed to intervene to prevent the unnecessary use of force.  <u>Jackson v. Sauls</u>, 206 F.3d 1156 (11th Cir. 2000)(One officer had no time to prevent another from shooting a suspect).

Such are the circumstances here.  The evidence suggests that officer Massey's grasping of the plaintiff's hair and smashing of the plaintiff's face into the concrete floor was so unanticipated and happened so quickly that none of the other officers had the chance to prevent it.  Thus, while officer Massey cannot be shielded by qualified immunity, plaintiff has failed to establish that any of the other officers present violated his constitutional rights in relation to the use of unnecessary force.  Officers Warrington, Rowland, and Brasher did not smash plaintiff's face into the floor, nor could they have reasonably anticipated and prevented Massey from doing so.  Thus, their individual conduct did not violate plaintiff's Fourth Amendment right to be free of the use of unnecessary and excessive force.  Plaintiff's Fourth Amendment excessive force claim against Warrington, Rowland, and Brasher must be dismissed, but he may proceed to trial on this claim against Massey.

### B.  Liability of the Municipality

It is well-settled that a municipality cannot be liable for a constitutional tort under § 1983 unless the deprivation of the

18

constitutional right occurred as a result of an official policy or long-standing practice or custom of the governmental body.  See Monell v. Department of Social Services of New York, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).  "A municipality cannot be held liable under § 1983 on a respondeat superior theory."  Id. at 691.  The Eleventh Circuit Court of Appeals has further determined that a municipality may be liable under § 1983 for the actions of a police officer only when the city's "official policy" caused the violation.  Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

In order to survive summary judgment on the § 1983 claims, the plaintiff must have come forward with evidence to show that the city had a policy of unlawfully or illegally arresting suspects, or that the occurrences of illegal arrests and use of excessive force were so frequent that the city was on notice of a need to better train or supervise its officers.  It is here that plaintiff has failed to offer any evidence to support his claim.  There simply is no evidence either of a city-sanctioned policy or custom of making illegal arrests or using excessive force or of such widespread abuses that the city was obligated to undertake training and discipline of its officers.  For this reason, defendant Pell City's motion for summary judgment on the plaintiff's § 1983 claims

19

against it for unlawful arrest and excessive force is due to be granted.

## II. State Law Claims

Plaintiff also asserts that he was unlawfully arrested, detained, and injured, all in violation of Alabama state law. Plaintiff states claims for false arrest, false imprisonment, and assault and battery.  The defendants assert that they are shielded from liability for all state-law claims on the basis of discretionary function immunity under Alabama law.

According to Alabama Code § 6-5-338, a police officer of any municipality in the state "shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  Id; see also Thurmond v. City of Huntsville, ___ So. 2d. ___, 2004 WL 596167 (Ala. Civ. App. 2004). Discretionary functions have been deemed to be "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take, and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances."  Moore v. Adams, 754 So. 2d 630, 632 (Ala. 1999), citing Wright v. Wynn, 682 So. 2d 1, 2 (Ala. 1996), and L.S.B. v. Howard, 659 So. 2d 43 (Ala. 1995); Thurmond v. City of Huntsville, ___ So. 2d. ___, 2004 WL 596167 (Ala. Civ. App. 2004).

20

The Alabama Supreme Court has held specifically that the immunity applies to the conduct of officers in the effectuation of an arrest.  See Ex parte City of Montgomery, 758 So. 2d 565, 570 (Ala. 1999).  The statutory immunity extends not only to the officers, but to the governmental unit that employs them.  Id.; see also Key v. City of Cullman, 2001 WL 1450651, *6-7 (Ala. Civ. App. 2001)(holding that if its police officer is entitled to immunity under § 6-5-338, the city also is entitled to immunity); Montgomery v. City of Montgomery, 732 So. 2d 305 (Ala. Civ. App. 1999)(holding that both the officer and the city were immune under § 6-5-338 for mistaken arrest of man).

The immunity shields the officers and the city from liability "unless [the] actions were conducted with willful or malicious intent or in bad faith."  Ex parte City of Montgomery, 758 So. 2d at 570; Thurmond v. City of Huntsville, ___ So. 2d. ___, 2004 WL 596167 (Ala. Civ. App. 2004).  Accordingly, the court evaluates a claim of discretionary function immunity by first determining whether the defendant was performing a discretionary function when the alleged wrongful conduct occurred.  If so, the burden shifts to the plaintiff to prove that the defendants acted in "bad faith, with malice or willfulness."  Wood, 323 F.3d at 883.[9]

---

[9]     It has been noted that discretionary function immunity and qualified immunity both involve a "core issue" of whether a defendant violated clearly established law.  Qualified immunity, however, cannot be defeated by a showing of bad faith, malice, or

21

As discussed *supra* in relation to qualified immunity, there are no allegations that any action any defendant took in arresting[10] plaintiff was motivated by bad faith, malice, or wilfullness.[11] The only allegation made by plaintiff that defendants acted in bad faith is that defendant Massey intentionally slammed the plaintiff's head into the concrete floor after plaintiff was restrained and subdued. For all the reasons discussed above in relation to qualified immunity, after accepting the plaintiff's version of the facts as true for summary judgment purposes, Massey's actions were without justification. Even the defendants do not argue that there was any justification for slamming Wiley's head onto the floor *after* he was restrained. They simply assert that Wiley "posed an immediate threat" to officers and bystanders

---

wilfulness; the subjective state of mind of the defendant is not relevant to qualified immunity.  Scarbrough v. Myles, 245 F.3d 1299, 1303 n.9 (11th Cir. 2001).

[10]    The court differentiates the act of making the arrest from the allegations of excessive force.  The plaintiff makes no showing that his arrest was motived by malice, but does allege bad faith in the conduct alleged to have injured his eye and head.

[11]    It is conceivable that the municipal defendant could be liable for torts of its employees pursuant to Alabama Code § 11-47-90 if the conduct was the result of "neglect, carelessness, or unskillfulness."  In this case, however, there is no allegation that plaintiff's arrest was due to neglect or a lack of skill or care. At the same time, plaintiff alleges that the excessive force was motivated by Massey's malice or wilfullness, and not the result of neglect, carelessness, or unskillfulness.  Accordingly, the excessive force claim and the related state-law assault and battery cannot be premised on conduct that gives rise to liability of Pell City under § 11-47-90.

22

*at the time* that he was brandishing the broken wheelbarrow handle. In fact, the defendants' version of events is that plaintiff's head hit the floor during the takedown, and not after he was handcuffed. Whether the plaintiff's head hit the floor during the officers' attempt to subdue him or after he was handcuffed and non-threatening poses a question of fact that is due to be addressed by the jury. Thus, officer Massey is not entitled to discretionary immunity as against plaintiff's claim that Massey intentionally and maliciously assaulted him by slamming his head on the concrete floor.

As to all other defendants, the motion for summary judgment on all state law claims is due to be granted. Officers Warrington, Brasher, and Rowland were acting well within their discretionary immunity in effecting the arrest and using a reasonable level of force to subdue the plaintiff during the arrest. Plaintiff offers no evidence that any of the other officers acted with malice or in bad faith during his arrest. Although it is true that plaintiff testified that officer Rowland placed a gun to his said and said that plaintiff was lucky he (Rowland) had not blown his brains out, there is no evidence that Rowland actually touched or assaulted to the plaintiff in doing so. Again, the complaint alleges only that officer Massey seized plaintiff's hair and slammed his head against the floor.

Likewise, the City of Pell City is shielded by the discretionary immunity enjoyed by each of the officers. To the extent that officers Rowland, Brasher, and Warrington are shielded by discretionary immunity, so is the city. Further, because plaintiff must allege that officer Massey's conduct was malicious and in bad faith in order to overcome his discretionary immunity, the city cannot be liable for it. Alabama Code § 11-47-190 limits a municipality's liability for the torts of its agents and servants to those that occur due to "neglect, carelessness or unskillfulness." This has been construed by Alabama courts as precluding municipal liability for intentional or malicious torts by the municipality's employees. Ex parte City of Gadsden, 718 So. 2d 716, 721 (Ala. 1998); Franklin v. City of Huntsville, 670 So. 2d 848, 850 (Ala. 1995)("Section 11-47-190 provides for an action against a municipality for the 'neglect, carelessness or unskillfulness' of its agents, not for their intentional torts"); Todd v. Kelley, 783 So. 2d 31 (Ala. Civ. App. 2000)(same).[12]

_____

[12] The case of Borders v. City of Huntsville, ___ So. 2d ___, 2003 WL 21715993 (Ala. 2003) is easily distinguished from the instant case. There, the plaintiff expressly alleged that the assault and battery was the result of the "neglect, carelessness or unskillfulness" of the police. In this case, the plaintiff explicitly alleges intentional and malicious conduct. For example, at page 7 of his brief in opposition to summary judgment, plaintiff wrote, "[T]here is sufficient evidence that the defendant officers acted with **willful and malicious intent or in bad faith** when plaintiff Wiley's face was slammed onto the concrete floor *after* having been handcuffed, lying face down on the floor and posing no

Because the plaintiff here explicitly asserts that the assault and battery by officer Massey occurred maliciously and in bad faith, the city is shielded from liability by <u>Alabama Code</u> § 11-47-190 (1975).

<strong><u>CONCLUSION</u></strong>

Based on the foregoing undisputed facts and legal conclusions, the court finds that the motion for summary judgment filed by the defendants is due to be granted in part and denied in part. The motion is due to be granted as to all claims against all defendants except the § 1983 claim of excessive force and the state-law claim of assault and battery against defendant Massey. There are genuine issues of material fact that preclude summary judge for officer Massey on these two claims.

A separate order will be entered in accordance with the findings set forth herein.

DATED this _____ day of July, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

---

reasonable possible threat." [Italics in original; bolding added for emphasis]